UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMERICANS FOR PROSPERITY,**<br><br>                    **Plaintiff,**<br><br>   v.<br><br>**GUBRIR GREWAL, in his official capacity as Attorney General of New Jersey, et al,**<br><br>                    **Defendants.** | Civil Action No. 3:19-CV-14228<br><br>Hon..Brian R. Martinotti, U.S.D.J.<br><br>Return Date: November 4, 2019<br>Oral argument requested |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE ON BEHALF OF STEPHEN M. SWEENEY, PRESIDENT OF THE NEW JERSEY SENATE, AND CRAIG J. COUGHLIN, SPEAKER OF THE NEW JERSEY GENERAL ASSEMBLY**

_____

                                          **CULLEN AND DYKMAN, LLP**
                                          433 Hackensack Avenue
                                          Hackensack, NJ 07601
                                          (201) 488-1300
                                          **Attorneys for Intervenor-Applicants**
                                          **Senate President Stephen M. Sweeney and**
                                          **Assembly Speaker Craig J. Coughlin**

**LEON J. SOKOL, ESQ.**
**Of Counsel and On the Brief**

**STEVEN SIEGEL, ESQ.**
**On the Brief**

# **TABLE OF CONTENTS**

**TABL:E OF AUTHORITIES** .................................................................................. iii

**PRELIMINARY STATEMENT** ..........................................................................1

**LEGAL ARGUMENT** ..........................................................................................3

    **POINT I** .......................................................................................................3

        **THE PRESIDING OFFICERS OF THE NEW JERSEY SENATE AND GENERAL ASSEMBLY ARE ENTITLED TO INTERVENE IN THIS ACTION UNDER THE AUTHORITY OF <u>EITHER</u> FED. R. CIV. PRO. 24(b)(1)(B) (INTERVENTION BY A GOVERNMENTAL OFFICER OR AGENCY) <u>OR</u> FED. R. CIV. PRO. 24(b)(2)(A) (PERMISSIVE INTERVENTION)**

        A.  The Presiding Officers are entitled to intervene pursuant to Fed. R. Civ. Pro. 24(b)(2)(A) ......................................................................3

            1. The Legislature's enactment of S150 was the product of intensive deliberation and amendment by both houses of the Legislature ........................................................................................4

            2. The legislative intent and purpose underlying S150 .....................6

            3.  Senate President Sweeney and Speaker Coughlin, as presiding officers of their respective legislative bodies, are entitled to represent the interests of the Senate and the Assembly in litigation ......................................................................7

        B. In the alternative, the Presiding Officers are entitled to intervene pursuant to Fed. R. Civ. Pro. 24(b)(1)(B) ...............................9

**CONCLUSION** ....................................................................................................11

## **TABLE OF AUTHORITIES**

### Cases

*Abbott v. Burke,*
    164 N.J. 84 (2000) ..............................................................................................7

*Appleton v. Comm'r,*
    430 Fed.Appx. 135 (3d Cir.2011) ......................................................................9

*Citizens United v. FEC*,
    558 U.S. 310 (2010)...................................................................................2, 6, 7

*Nat'l Collegiate Athletic Ass'n v. Christie,*
    61 F. Supp. 3d 488, 491 .....................................................................................8

*Halderman v. Pennhurst State Sch. & Hosp.,*
    612 F.2d 84 (3d Cir.1979) .................................................................................4

*In re Forsythe,*
    91 N.J. 141 (1982) .............................................................................................8

*In Re Governor Christie's Appointment,*
    436 *N.J. Super* 575 (App. Div. 2014)................................................................8

*Karcher v. Kean,*
    97 N.J. 483 (1984) .............................................................................................7

*Karr v. Castle*,
    768 F. Supp. 1087 (D. Del. 1991)......................................................................4

*Metro Transp. Co. v. Balboa Ins. Co.,*
    118 F.R.D. 423 (E.D. Pa. 1987)..................................................................3, 4, 9

*N.C.A.A. v. Governor of N.J.,*
    520 Fed.Appx. 61 (3d Cir.2013) ........................................................................9

*Nuesse v. Camp,*
    385 F.2d 694 (D.C.Cir.1967).............................................................................3

*Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.,*
    310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).........................................4

### **Court Rules**

Fed. R. Civ. P. 24(b)(2) ...........................................................................................9

Fed. R. Civ. P. 24(b)(2)(A).................................................................................1, 3

Fed. R. Civ. Pro. 24 .................................................................................................4

Fed. R. Civ. Pro. 24(b)(1)(B) ............................................................................................1, 3, 9, 10

## Other authorities

7C Wright & Miller, *Fed. Prac. & Proc.* § 1912 (3d ed.) ................................................................4

## **PRELIMINARY STATEMENT**

Stephen M. Sweeney, President of the New Jersey Senate, and Craig J. Coughlin, Speaker of the General Assembly (hereafter collectively, "the Presiding Officers"), respectfully request leave to intervene as Defendants in this matter. The Presiding Officers seek to intervene in order to represent the interests of the New Jersey Senate and New Jersey General Assembly in this action challenging a recently enacted statute.

This litigation seeks declaratory and injunctive relief against Senate Bill No. 150 (enacted as L.2019, c. 124) (hereafter "the Act" or "S150"). The Act requires certain independent expenditures committees to disclose contributions and expenditures in excess of identified monetary thresholds to the Election Law Enforcement Commission (ELEC). The Act was passed by the Senate and the Assembly on June 10, 2019. It was signed by the Governor on June 17.

On June 25, Americans for Prosperity ("AFP" or "Plaintiff"), a 501(c)(4) organization, filed a Verified Complaint and application for an Order to Show Cause seeking to enjoin the enforcement of the Act. On September 17, this Court heard oral argument on Plaintiff's Order to Show Cause. By opinion and order dated October 2, this Court granted Plaintiff's application for preliminary injunctive relief.

In seeking leave to intervene, the Presiding Officers rely on two distinct alternative grounds authorizing intervention. The first alternative ground permits intervention by a government officer or agency when "a party's claim or defense is based on … a statute or executive order administered by the officer or agency." Fed. R. Civ. P. 24(b)(2)(A). The second alternative ground is the familiar general permissive intervention standard, Fed. R. Civ. Pro. 24(b)(1)(B), which requires: (a) the motion to be timely; (b) an applicant's claim or defense and the main action have a question of law or fact in common; and (c) the intervention may not

1

cause undue delay or prejudice to the original parties' rights.  It is respectfully submitted that the Presiding Officers are entitled to intervene under either, or both, of these two grounds.

The Presiding Officers seek to bring a distinct perspective to the critical issues raised by this litigation. As set forth herein, the Legislature for the past two years has grappled with the enactment of legislation that will pass constitutional muster while addressing the issue of limitless and anonymous "dark money" in the wake of the change in the law effected by the decision of the United States Supreme Court in *Citizens United v. FEC*, 558 U.S. 310 (2010). The flood of "dark money" in New Jersey politics has effected a sea-change in the scope and scale of expenditures by independent organizations. It has been estimated that expenditures by independent groups in New Jersey's 2018 Congressional campaigns exceeded *by a factor of six* the expenditures of state and county party committees. Sokol Aff., Exhibit "B".  Prior to *Citizens Union*, expenditures by independent organizations were insignificant in comparison to party committees. *Ibid*.  Confronted with this change, the Legislature responded by enacting a statute that attempts to address the new political reality ushered in by the Supreme Court's decision in *Citizens United*.

The statute mandates disclosure of the contributions and expenditures of independent groups – similar to the long established disclosure regime applicable to political parties and candidates.   Undoubtedly, the values underlying the First Amendment are squarely implicated in any effort that affects political expression.  However, the view of the Presiding Officers is that the application of these First Amendment values must properly reflect the changing nature of political campaigns and political expenditures in the post-*Citizens United* world.

In short, the Presiding Officers respectfully seek leave to intervene in order to present these and other vital factual issues and legal perspectives before this Court.

## LEGAL ARGUMENT

### POINT I

**THE PRESIDING OFFICERS OF THE NEW JERSEY SENATE AND GENERAL ASSEMBLY ARE ENTITLED TO INTERVENE IN THIS ACTION UNDER THE AUTHORITY OF <u>EITHER</u> FED. R. CIV. PRO. 24(b)(1)(B) (INTERVENTION BY A GOVERNMENTAL OFFICER OR AGENCY) <u>OR</u> FED. R. CIV. PRO. 24(b)(2)(A) (PERMISSIVE INTERVENTION)**

This Court should allow Senate President Sweeney and Speaker Coughlin to intervene in this action because, as Presiding Officers of the New Jersey Legislature, they are clearly interested in the subject matter and outcome of this lawsuit. The action challenges the constitutionality of a statute recently enacted by the Legislature. The Presiding Officers' participation will assist in the development of the issues in the lawsuit, and in no way will prejudice any of the parties.

The Presiding Officers are entitled to intervene in this action under the authority of *either* Fed. R. Civ. Pro. 24(b)(2)(A) (intervention by a governmental officer or agency) *or* Fed. R. Civ. Pro. 24(b)(1)(B) (permissive intervention). Each of these alternative grounds is addressed in turn.

**A. The Presiding Officers are entitled to intervene pursuant to Fed. R. Civ. Pro. 24(b)(2)(A)**

Fed. R. Civ. P. 24(b)(2)(A) provides, in relevant part, that permissive intervention may be granted to a government officer or agency when "a party's claim or defense is based on … a statute or executive order administered by the officer or agency."

"Rule 24(b) expands the traditional concept of claim or defense insofar as intervention by a governmental officer or agency is concerned." *Nuesse v. Camp,* 385 F.2d 694, 705 (D.C.Cir.1967). "The rule requires that intervention be granted liberally to governmental agencies because they purport to speak for the public interest." *Metro Transp. Co. v. Balboa*

3

*Ins. Co.,* 118 F.R.D. 423, 424 (E.D. Pa. 1987); *Karr v. Castle*, 768 F. Supp. 1087, 1092 (D. Del. 1991) ("The thrust of this portion of Rule 24(b) is in the direction of liberally allowing government agencies to intervene").

The Third Circuit described an earlier, substantially similar version of the rule as "mak[ing] specific provision for intervention by governmental agencies interested in statutes, regulations, or agreements relied upon by the parties in the action." *Halderman v. Pennhurst State Sch. & Hosp.,* 612 F.2d 84, 92 (3d Cir.1979) *rev'd on other grounds,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). *See also* Fed. R. Civ. Pro. 24 Advisory Committee's notes. "The rule requires that intervention be granted liberally to governmental agencies because they purport to speak for the public interest." *Metro Transp. Co. v. Balboa Ins. Co.,* 118 F.R.D. 423, 424 (E.D.Pa.1987) (citing 7C Wright & Miller, *Fed. Prac. & Proc.* § 1913 (3d ed.)). Indeed, even before Rule 24 was amended to provide for the intervention of a government agency or officer in an action in which a party relies on a statute that the governmental entity administers, the Supreme Court sanctioned intervention by the government when appropriate and useful to advance the public interest. *See* 7C Wright & Miller, *Fed. Prac. & Proc.* § 1912 (3d ed.) (discussing *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940)).

**1. The Legislature's enactment of S150 was the product of intensive deliberation and amendment by both houses of the Legislature**

This litigation challenges the constitutionality of a New Jersey statute, Senate Bill No. 150 (enacted as *L.*2019, *c.* 124) (hereafter "the Act" or "S150"). The Act requires certain independent expenditures committees to disclose contributions and expenditures in excess of identified monetary thresholds to the Election Law Enforcement Commission (ELEC). The Act was passed by the Senate and the Assembly on June 10, 2019. It was signed by the Governor on June 17.

The following is a brief summary of the legislative history of S150. As can be readily discerned from this lengthy legislative history, S150 was the subject of intensive deliberation and amendment by both houses of the Legislature.

The legislation was originally introduced in the Senate as S1500 and in the Assembly as A1524. On February 1, 2018, S1500 was referred to Senate State Government, Wagering, Tourism & Historic Preservation Committee. On January 17, 2019, the bill was transferred to Senate Budget and Appropriations Committee. On the same day the bill was reported from that Committee with amendments. On January 24, 2019, the bill was recommitted to the Senate Budget and Appropriations Committee. On January 31, the bill was reported from Senate Committee with Amendments. On February 21, the bill was passed by the Senate 31-0. *See* Sokol Aff., Exhibit "C".

On February 25, S1500 was received in the Assembly and referred to the Assembly State and Local Government Committee. The bill was substituted for A1524. On March 18, the bill was transferred to the Assembly Appropriations Committee. On the same date the bill was reported out of the Committee with amendments. On March 25, the bill was passed by the Assembly, 60-1-17. On the same day, the amended bill was received in the Senate for a second reading on concurrence. On that date, the Senate voted 33-0 on Senate Amendments. Also on that date, the Assembly voted 66-2-8 on the amended legislation. On May 13, the Governor issued a conditional veto. *See id.*

On June 10, the legislation was re-introduced in the Senate as S150. On that date the Senate considered the bill by way of an emergency resolution by a vote of 31-0. Also on that date, the bill was passed by the Senate by a vote of 35-0. Also on June 10, S150 was received in the Assembly wherein it was substituted for A100. The bill was then considered by the Assembly by way of an emergency resolution by a vote of 66-5-0. The Assembly passed the

5

bill by a vote by a vote of 68-0-4. On June 17, the Governor signed S150 into law. *See* Sokol Aff., Exhibit "D".

**2. The legislative intent and purpose underlying S150**

The intent and purpose of the Legislature in enacting S150 was to ensure greater disclosure of expenditures and contributions by independent groups. After over two years of deliberation and amendment, the Legislature's efforts culminated in the passage of S150 – a landmark law that directly addresses the issue of limitless and anonymous "dark money" in the wake of the change in the law effected by the decision of the United States Supreme Court in *Citizens United v. FEC*, 558 U.S. 310 (2010).

As a result of *Citizens United*, New Jersey – like many other states – has experienced a massive increase in political spending by independent groups. Indeed, hearings conducted by the Legislature (leading up to the passage of S150) demonstrated the magnitude of this change in political expenditures. For example, in a hearing before the Senate Budget and Appropriations Committee on S1500 (the predecessor bill to S150), Jeffrey Brindle, Executive Director of ELEC, testified that "[d]uring New Jersey's Congressional campaign [in 2018], … independent groups spent a record $49 million [whereas] state and county party committees spent just $8.1 million." Sokol Aff., Exhibit "B". By contrast, just a few years before *Citizens United* was decided, "independent groups spent little or nothing while political parties spent $34 million. *Ibid.*

Confronted with this sea-change in political expenditures, the Legislature crafted a statute that mandates disclosure of the contributions and expenditures of independent groups – similar to the long established disclosure regime applicable to political parties and candidates. The Legislature's approach is based on the time-honored principle that "sunlight is the best disinfectant"– the very approach that has been repeatedly endorsed and upheld by the United

6

States Supreme Court from *Buckley v. Valeo* through *Citizens United*. In this way the Legislature sought to "level the playing field" as between the traditional political participants and the new types of organizations that have sprung up in the past decade and that threaten to eclipse these traditional political participants in the scope and scale of expenditures.

Against this backdrop, the values underlying the First Amendment are undoubtedly implicated in this legislative effort – indeed, such values must be addressed and applied in *any* legislative effort that affects expenditures on political expression. However, the view of the Presiding Officers is that the application of these First Amendment values must properly reflect the changing nature of political campaigns and political expenditures in the post-*Citizens United* world. It is this post-*Citizens-United* perspective that underlies the Legislature's enactment of S150.[1]

The Presiding Officers respectfully seek leave to intervene in order to present these and other vital factual issues and legal perspectives before this Court.

## 3. Senate President Sweeney and Speaker Coughlin, as presiding officers of their respective legislative bodies, are entitled to represent the interests of the Senate and the Assembly in litigation

It has long been recognized that the Presiding Officers of the New Jersey Legislature may represent the interests of their respective legislative bodies in litigation. *See, e.g., Abbott v. Burke,* 164 N.J. 84, 87 (2000) (allowing Assembly Speaker to intervene in appeal "out of deference to the constitutional branches of government"); *Karcher v. Kean,* 97 N.J. 483, 487 (1984) (considering

---

[1] Plaintiff has argued to this Court that one aspect of the legislative deliberations was "a personal feud between Governor Phil Murphy and Senator [Stephen] Sweeney." (ECF No. 3-1, at 17). However, as the Attorney General noted at oral argument on the preliminary injunctive application (and as quoted in this Court's opinion of October 2), "there's certainly political infighting going into *any* legislation,"(emphasis added), and that such "infighting" is irrelevant to the issues that are properly before this Court. (ECF No. 39, at 23 (opinion, at 23). Furthermore, the Act "was passed… because of a massive change in the political landscape in New Jersey… [in light of the undisputed fact that] "spending by independent groups far exceeds spending by political parties in New Jersey." (ECF No. 39, at 23 (opinion, at 23).

7

appeal brought by the Senate President and Speaker, on behalf of their respective legislative bodies, challenging the Governor's use of the line-item veto); *In re Forsythe,* 91 N.J. 141, 144 (1982) (allowing the Senate President and the Assembly Speaker to intervene to defend redistricting statute).

More recently, the New Jersey Appellate Division expressly recognized the standing of the Senate President to bring an appeal to advance the interest of the Senate. *See In Re Governor Christie's Appointment,* 436 *N.J. Super* 575, (App. Div. 2014). The court held:

> We are convinced that the Senate has a strong interest in exercising its authority to advise and consent to gubernatorial appointments, if such advice and consent is required by law. **We are also convinced that, as Senate President, Sweeney has standing to bring this appeal to advance that interest.**
>
> Recognition of the Senate President's standing in this dispute is consistent with past practice….
>
> The Governor argues that Senator Sweeney should not be permitted to represent the Senate's interest in this case because the Senate did not adopt a resolution authorizing him to do so. We note that in *General Assembly of New Jersey v. Byrne*, 90 N.J. 376, 381 (1982), the Legislature had passed a concurrent resolution authorizing the Senate President and Assembly Speaker to begin a legal action to enforce certain legislation. However, **such a resolution is not required to confer standing on the Senate President to further the Senate's institutional interests through litigation.**
>
> [*Id.* at 587 (emphasis added)]

Similarly, the United States District Court for the District of New Jersey has held that the Senate President and the Assembly Speaker are entitled to represent the interests of the Senate and the Assembly in litigation in the District of New Jersey challenging the validity of statute enacted by the Legislature. *See, e,g., Nat'l Collegiate Athletic Ass'n v. Christie,* 61 F. Supp. 3d 488, 491, n. 1 (D.N.J. 2014) (granting leave to intervene to the Senate President and the Assembly Speaker with respect to litigation challenging a law legalizing sports betting in New Jersey), *aff'd sub nom., Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey,* 799 F.3d 259 (3d Cir. 2015), *reh'g en banc granted, opinion vacated (Oct. 14, 2015), on reh'g en banc,* 832 F.3d 389 (3d Cir. 2016), and

8

*aff'd sub nom., Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey,* 832 F.3d 389 (3d Cir. 2016); *cert. granted,* 137 S.Ct. 2326 (2017).

*** 

As previously noted, Fed. R. Civ. P. 24(b)(2) "requires that intervention be granted liberally to governmental agencies because they purport to speak for the public interest." *Metro Transp. Co. v. Balboa Ins. Co.,* 118 F.R.D. 423, 424 (E.D. Pa. 1987). This motion seeks precisely to interject the Legislature's factual and legal perspectives that address the vital public interest at issue in this litigation. For these reasons, the Presiding Officers' motion to intervene should be granted pursuant to Fed. R. Civ. P. 24(b)(2).

## B.  In the alternative, the Presiding Officers are entitled to intervene pursuant to Fed. R. Civ. Pro. 24(b)(1)(B)

The Presiding Officers also are entitled to intervene pursuant to Fed. R. Civ. Pro. 24(b)(1)(B) – the general permissive intervention rule that is applicable to *any* proposed intevenor (as distinct from government agencies or officers).   Permissive intervention requires: (1) the motion to be timely; (2) an applicant's claim or defense and the main action have a question of law or fact in common; and (3) the intervention may not cause undue delay or prejudice to the original parties' rights. *See* Fed.R.Civ.P. 24(b); *see also N.C.A.A. v. Governor of N.J.,* 520 Fed.Appx. 61, 63 (3d Cir.2013); *Appleton v. Comm'r,* 430 Fed.Appx. 135, 137–38 (3d Cir.2011). So long as these threshold requirements are met, whether to allow a party to permissively intervene is left to the sound discretion of the court. *See N.C.A.A.,* 520 Fed.Appx. at 63.

As to the first factor, the Presiding Officers' motion is timely. The Presiding Officers have moved to intervene early in this litigation – shortly after this Court's grant of a preliminary injunction in favor of the Plaintiff.  No discovery has taken place.  No dispositive motions have occurred.

As to the second factor, the Presiding Officers' position in this litigation undoubtedly

9

shares a common question of law with the position to be put forward by Defendant Attorney General in this litigation. To state the obvious: the Attorney General is defending the constitutionality of the statute under challenge in this litigation. The Presiding Officers also will be defending the constitutionality of the statute.

As to the third factor, the intervention will not cause "undue delay or prejudice" to the rights of either Plaintiff or Defendant. Indeed, the intervention will not cause *any* delay or prejudice whatsoever. As noted above, the Presiding Officers have filed this motion at the very inception of this litigation. Moreover, the Presiding Officers' intervention will not cause any delay to current proceedings before the Court.

Accordingly, it is respectfully submitted that the factors governing permissive intervention are satisfied. *See* Fed. R. Civ. Pro. 24(b)(1)(B). That being so, the Presiding Officers' motion for permissive intervention should be granted.

## CONCLUSION

For the reasons set forth above, the motion of Senate President Sweeney and Assembly Speaker Coughlin – seeking leave to intervene as Defendants – should be granted.

Respectfully submitted,

/s/   Leon J. Sokol
Leon J. Sokol
CULLEN AND DYKMAN, LLP
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300
Attorneys for Intervenor-Applicants
Senate President Stephen M. Sweeney and
Assembly Speaker Craig J. Coughlin

Dated: October 10, 2019