<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| | : | |
| AMERICANS FOR PROSPERITY, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:19-cv-14228-BRM-LHG |
| | : | |
| | : | |
| GURBIR GREWAL, in his official capacity | : | |
| *As Attorney General of New Jersey*, et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |
| | : | |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Americans for Prosperity's ("AFP") Motion for Attorney's Fees in the amount of $1,429,134.59. (ECF No. 65.) Defendants Gurbir Grewal, Attorney General of New Jersey, Eric H. Jaso, Chairman of New Jersey Election Law Enforcement Commission (or "ELEC"), and two ELEC Commissioners, Stephen M. Holden and Marguerite T. Simon, (collectively, "Defendants") opposed the Motion. (ECF No. 66.) AFP filed a Reply. (ECF No. 68.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, AFP's Motion is **GRANTED IN PART and DENIED IN PART.**

## I.    BACKGROUND

At issue before the Court is whether AFP is entitled to attorney's fees pursuant the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. The facts and procedural history of

this matter are set forth in the Court's October 2, 2019 Opinion (ECF No. 39),[1] and need not be repeated here. The following procedural background is pertinent to this Motion.

On June 25, 2019, AFP filed a Motion for a Preliminary Injunction to enjoin Defendants from enforcing New Jersey Senate Bill No. 150 ("S150"). (ECF No. 3.) Defendants opposed the Motion on August 20, 2019. (ECF No. 29.) On October 2, 2019, the Court granted AFP's Motion for a Preliminary Injunction. (ECF No. 40.) On March 17, 2020, the Court converted the preliminary injunction into a permanent injunction. (ECF No. 59.) As a result, on July 15, 2020, AFP, as the prevailing party, filed this Motion for Attorneys' Fees. (ECF No. 65.) On August 12, 2020, Defendants opposed the Motion. (ECF No. 66.) On August 25, 2020, AFP filed a Reply.[2] (ECF No. 68.)

## II.   LEGAL STANDARD

Under 42 U.S.C. § 1988(b), in proceedings involving the alleged violation of federal constitutional or civil rights, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, No. 02-4549, 2006 U.S. Dist. LEXIS 62966, at *15 (D.N.J. Sept. 5, 2006) (citing 42 U.S.C. § 1988(b)). Section 1988 applies to First Amendment claims. *See id.* at *2; *Glass v. Snellbaker*, No. 05-1971, 2008 U.S. Dist. LEXIS 73012, at *2 (D.N.J. Sept. 23, 2008).

Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel. C.O.*

---

[1] *Americans for Prosperity v. Grewal,* No. 3:19-cv-14228, 2019 U.S. Dist. LEXIS 170793 (D.N.J. October 2, 2019).

[2] The parties engaged in settlement discussions with the Honorable Lois H. Goodman, United States Magistrate Judge, but were unable to come to a resolution.

*v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *superseded by the Prison Litigation Reform Act on other grounds*). To "succeed" under this standard, a party must achieve a "court-ordered 'change in the legal relationship between the AFP and the defendant.'" *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources*, 532 U.S. 598, 604 (2001) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

In general, a prevailing plaintiff should ordinarily be awarded attorney's fees, "unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citations omitted). "[A] reasonable fee is one which is adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." *Scanno v. F.H. Cann & Assocs.*, 794 F. App'x 220, 222 n.7 (3d Cir. 2019) (citing *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "The most useful starting point for determining the amount of a reasonable fee . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434. The resulting product of this calculation is called the "lodestar." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (citing *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "There is a 'strong' presumption that the lodestar is the 'reasonable' fee." *Id.* at 562 (citing *Del. Valley*, 478 U.S. at 565).

The party seeking an award of attorney's fees bears the burden of establishing the reasonableness of the hours spent and the rates charged. *Hensley*, 461 U.S. at 437. "The fee petition must be 'specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.'" *Abdi Jama v. Esmor Corr. Servs.*, 549 F. Supp. 2d 602, 611 (D.N.J. 2008) (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)). Once the applicant produces satisfactory evidence, the burden shifts

to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended." *Apple Corps. v. International Collectors Soc'y*, 25 F. Supp. 2d 480, 485 (D.N.J. 1998) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

In addition to the lodestar figure, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. However, a district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Rode,* 892 F.2d at 1183 (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Further, a district court "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record." *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997) (citations omitted).

## III. DECISION

Here, AFP achieved a preliminary injunction that prevents Defendants from enforcing S150 (ECF No. 40), which was later converted to a permanent injunction with the parties' consent (ECF No. 59). These achievements result in both a modification of Defendants' behavior, and a benefit for AFP. Therefore, AFP is the prevailing party, which Defendants do not dispute, and it is therefore entitled to recover the reasonable attorney's fees it incurred in successfully challenging S150 under § 1988. AFP seeks to recover $1,429,134.59 in costs and fees. (ECF No. 65-1 at 10.) This includes $1,381,276.59 billed by Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") (ECF No. 65-2 at 8), $86,158.52 by Marino, Tortorella & Boyle, P.C. ("Marino Tortorella") (ECF No. 65-3 at 2), and $19,699.48 by Lowenstein Sandler LLP ("Lowenstein Sandler") (ECF No. 65-4 at 2). This court has undertaken a painstaking and thorough review of the certifications submitted in support of this application.

4

### A.    Analysis of the Reasonableness of Hours Expended by Quinn Emanuel

"The first step in calculating the lodestar is determining whether the number of hours expended was reasonable." *Abdi Jama*, 549 F. Supp. 2d at 611. The hours a lawyer devotes to a matter are considered reasonably expended unless they are "excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). Any "hours that were not reasonably expended" must be excluded from the fee calculation. *Hensley*, 461 U.S. at 434. "Hours that are not properly billed to one's client also are not properly billed to one's adversary." *Id.* (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).

### 1.    Certain Billed Activities are Not Compensable

AFP seeks fees representing 1,873 hours that Quinn Emanuel attorneys and staff expended. (ECF No. 68-1 at 2.) Defendants argue certain activities of AFP's counsel are not compensable. (ECF No. 66 at 21.) Such activities include: (1) lobbying; (2) pre-litigation alternative strategies for relief; (3) work on earlier statutes; (3) routine law office work; (4) preparations for discovery that never occurred; (5) review of news articles and contact with media; (6) work related to the intervenors; and (7) research and preparation for appeals that never occurred. (*Id.*) Defendants maintain these activities are either unrelated to the actual litigation with Defendants, e.g., for lobbying efforts, or are unnecessary because they involve aspects of litigation that did not actually occur. (*Id.* at 22.) Therefore, Defendants contend the Court should remove the hours expended on these allegedly non-compensable activities. (*Id.* at 24.) The Court finds some of these hours were not reasonably expended.

### a.       Lobbying Is Not Compensable

AFP seeks to bill for pre-litigation work on lobbying against S1500[3] and S150, proposed redlining of the bills, as well as meeting with New Jersey Governor Phillip Murphy's (the "Governor") Office about the legislation. (ECF No. 65-2 Exs. 1–3 at 21–44.) Defendants maintain such efforts came well before AFP filed suit and, therefore, cannot reasonably be said to have been expended "on the litigation." (ECF No. 66 at 22 (citing *Hensley*, 461 U.S. at 433).) Defendants analogize the lobbying efforts to optional administrative remedies that are not compensable. (*Id.* (citing *Webb v. County Bd. of Educ.*, 471 U.S. 234, 243 (1985)).)

The Court declines to award attorney's fees for AFP's counsel's lobbying efforts, for the following reasons. First, AFP has "not demonstrated that 'lobbying' on the issue could not have been done by non-lawyers." *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 929 (S.D. Ohio 2009) (declining to award attorney's fees for the plaintiff's pre-suit lobbying activities). Second, "there is no objective manner by which to measure the effectiveness of counsels' [lobbying] efforts." *Id.* After all, AFP's counsel's lobbying efforts failed to prevent S100 from being signed into law. Also, the Court does not find these lobbying efforts were vital to the parties' settlement agreement underlying the permanent injunction, which was not reached until the Court issued the preliminary injunction in favor of AFP. Third, lobbying is analogous to an optional administrative remedy that is not recoverable. *See, e.g., West*, 657 F. Supp. 2d at 929 ("If fees incurred to exhaust required administrative remedies are not recoverable, it is highly doubtful that fees incurred to lobby elected officials should be recoverable."); *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir 2004) ("Because the lobbying occurred before the lawsuit was filed and was not a necessary prerequisite to filing suit, the district court

---

[3] S1500 is the initial version of S150.

did not abuse its discretion in deducting  the hours spent on lobbying activities."); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (citations omitted) (concluding "time spent lobbying a state legislature before filing a lawsuit is not time 'reasonably expended on the litigation,'" because "pre-litigation lobbying is not a necessary precursor to the filing of a lawsuit" and resembles an optional administrative remedy "not within the purview of 'litigation'").

The Court is aware of other cases which allow awarding attorney's fees for lobbying efforts. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, No. 95-2097, 2014 U.S. Dist. LEXIS 103415, at *43 (D.N.J. May 19, 2014) (citing *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)), *report and recommendation adopted in part, rejected on other grounds*, 2014 U.S. Dist. LEXIS 104774 (D.N.J. July 28, 2014) ("Fees for lobbying work may be compensable if the work is directly related to securing the final result obtained from the litigation."); *see also United States v. City of San Diego*, 18 F. Supp. 2d 1090, 1099 (S.D. Cal. 1998) (citing *Davis*, 976 F.2d at 1545) ("*Davis* authorizes awarding attorney's fees for lobbying done to protect interests that are intimately related to the litigation."). However, for the reasons stated above, the Court does not find AFP's counsel's lobbying efforts were directly and intimately related to securing the final relief here. Accordingly, the Court declines to award attorney's fees for AFP's counsel's lobbying efforts and other optional pre-litigation alternative strategies. The hours billed for such non-compensable activities include: Derek L. Shaffer ("DLS") billed 28.3 hours[4], D'Andrea Green ("DG") 0.5 hour[5], Paul Henderson

---

[4] This represents: (1) 1.9 hours billed on April 12, 2019 (ECF No. 65-2 Ex. 1 at 21–28); (2) 20.3 hours billed on May 13, 2019 (*id.* Ex. 2 at 29–36); and (3) 6.1 hours billed on June 14, 2019 (*id.* Ex. 3 at 37–43).

[5] This represents 0.5 hour billed on May 13, 2019. (*Id.* Ex. 2 at 29–36.)

("PH2") 48.4 hours[6], William A. Burck ("WAB") 1.7 hours[7]; J. Matthew Hamann ("JMH") 59.8 hours[8], and Radhe Patel ("RP7") 0.5 hour[9].

In addition, several of the time entries on June 14, 2019, are completely redacted. (*See* ECF No 65-2 Ex. 3 at 39–41.) AFP explains certain time entries have been redacted to preserve any applicable privilege, or to remove bank account and taxpayer ID information. (*Id.* at 9.) But these redactions leave the Court with no basis to ascertain the nature of the billed activities corresponding to these time entries, which AFP could have provided without comprising potentially privileged information. Especially because some other unredacted time entries entered on June 14, 2019, involve lobbying activities, such as discussing a "strategy to address potential legislative override of governor's conditional veto" of S1500 and "prepare talking points to distribute to legislators" (*id.* Ex. 3 at 41), the Court cannot rule out the possibility that some redacted time entries also involve non-compensable lobby activities. Therefore, AFP fails to meet its burden to prove the reasonableness of the attorney's fees as to the redacted entries. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *see also Denton v. Pennymac Loan Servs., LLC*, 252 F. Supp. 3d 504, 523 (E.D. Va 2017) (citations omitted) ("Parties are generally entitled to assert privilege and redact records in connection with motions for fees but they are not thereby

---

[6] This represents: (1) 43.2 hours billed on May 13, 2019 (*id.* Ex. 2 at 29–36); and (2) 5.2 hours billed on June 14, 2019 (*id.* Ex. 3 at 37–43).

[7] This represents 1.7 hours billed on May 13, 2019. (*Id.* Ex. 2 at 29–36.)

[8] This represents: (1) 56.1 hours billed on May 13, 2019 (*id.* Ex. 2 at 29–36); and (2) 3.7 hours billed on June 14, 2019 (*id.* Ex. 3 at 37–43).

[9] This represents 0.5 hour billed on June 14, 2019. (*Id.* Ex. 3 at 37–43.)

relieved of the burden of proving the reasonableness of the fees."); *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 220 (E.D. Pa. 2002) (excluding, in the attorney's fees determination, the time entries for which "the redacted information has never been supplied to the court," out of a "great concern about the misuse of privilege logs to deny reasonable, relevant and probative evidence to the adversary"). As a result, the Court excludes these completely redacted time entries in the attorney's fees calculation. *TempPay Inc. v. Biltres Staffing of Tampa Bay, LLC*, No. 8:11-cv-2732-T-27AEP, 2013 U.S. Dist. LEXIS 158724, at *8 (M.D. Fla. Oct. 30, 2013) ("[T]he redacted time entries that do not exclude the possibility that the time was spent [on certain non-compensable activities] are not included in the fee award."); *see also People for the Ethical Treatment of Animals v. Dade City's Wild Things*, No. 8:16-cv-2899-T-36AAS, 2020 U.S. Dist. LEXIS 108315, at *11–12 (M.D. Fla. May 28, 2020) (citations omitted) ("The court cannot determine whether an activity or the time spent on that activity is reasonable if it does not know the details about the work performed. Thus, the time billed in the heavily redacted entries should not be fully compensated."); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 31 (N.D.N.Y. 2015) (citations omitted) ("[C]ourts in this circuit have reduced attorney's fees on vagueness grounds where, as here, the time records were 'so thoroughly redacted that the Court could not reasonably review them.'"). Such completely redacted time entries include: 35.8 hours by JMH, 13.8 hours by RP7, 5.5 hours by PH2, 4.2 hours by DLS, and 1.5 hours by WAB. (ECF No 65-2 Ex. 3 at 39–41.) The Court will remove them under the umbrella for the hours billed for lobbying efforts.

This brings the total number of hours to be removed on lobbying efforts and other optional pre-litigation alternative strategies to: 32.5 hours by DLS, 0.5 hour by DG, 53.9 hours by PH2, 3.2 hours by WAB; 95.6 hours by JMH, and 14.3 hours by RP7.

###### b.    The Hours Billed for Routine Law Office Work Are Excessive

Defendants argue AFP's counsel billed for activities that ordinarily would not be billed to a client, such as organizing files and documents, reviewing dockets, and calendaring. (ECF No. 66 at 22.) Defendants maintain they should not be saddled with such costs. (*Id.* at 23.) AFP counters routine law firm activities are compensable because they are *de minimus* and directly related to and necessary for the litigation. (ECF No. 68 at 19.) The Court disagrees.

"Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Courts do not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Id*. Here, DLS, a partner at Quinn Emanuel, billed 6.1 hours[10] for reviewing the docket.[11] DLS could have delegated this work to a less experienced colleague. *See Feltzin v. Ciampa Whitepoint LLC*, No. 15-CV-2279 (JBW)(PK), 2017 U.S. Dist. LEXIS 20323, at *9 (E.D.N.Y. Feb. 13, 2017) ("[A]lmost all of [the plaintiff's counsel's] other time entries involve 'reviewing' either ECF docket entries or e-mails between [the plaintiff's counsel] and opposing counsel, work that does not require a partner to perform."). Indeed, DG, who is a paralegal, also billed for docket review.[12] Therefore, though not questioning the total

---

[10] This represents: (1) 0.2 hours billed on July 11, 2019 (ECF No. 65-2 Ex. 4 at 45–60); (2) 0.8 hours billed on August 12, 2019 (*id.* Ex. 5 at 61–70); (3) 1 hour billed on September 17, 2019 (*id.* Ex. 6 at 71–82); (4) 1.8 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96); (5) 0.8 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); (6) 0.2 hours billed on December 11, 2019 (*id.* Ex. 9 at 107–11); (7) 0.4 hours billed on January 13, 2020 (*id.* Ex. 10 at 112–17); (8) 0.5 hours billed on February 20, 2020 (*id.* Ex. 11 at 118–23); and (9) 0.4 hours billed on March 11, 2020 (*id.* Ex. 12 at 125–29).

[11] If a billing entry describes more than two types of work and contains reviewing docket by DLS, 0.1 hours is attributed to each description of reviewing docket.

[12] For example, DG billed approximately 0.6 hours for reviewing, receiving or circulating docket filings on August 12, 2019. (ECF No. 65-2 Ex. 5 at 61–70.)

number of hours billed for docket review, the Court determines these hours are more appropriately billed at rate for a paralegal. *See In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 855 (3d Cir. 1994) (citing *In re Vogue*, 92 Bankr. 717, 718 (Bankr. E.D. Mich. 1988)) ("At least absent justifying circumstances (such as time pressures not brought on by a lack of diligence, the excusable non-availability of a less experienced employee, or an inability to delegate the task efficiently, perhaps because the learning curve renders effective delegation infeasible), 'when an experienced attorney does clerk's work, he or she should be paid clerk's wages.'"); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 762 F.2d 272, 279 (3d Cir. 1985), *rev'd in part on other grounds*, 478 U.S. 546 (1986) (awarding able and experienced counsel attorney's fees at paralegal rates for work which was 'mundane or minor in character'). The Court finds no other instance of AFP's senior counsel billing for routine law firm activities. Accordingly, the Court reduces the number of reasonably expended hours billed by DLS for reviewing dockets from 6.1 hours to 2 hours, which is equivalent to applying a much-discounted hourly rate to these hours.

A court may choose not to reduce the billable hours on easily delegable activities, if the number of hours is *de minimis* and the instances of nondelegation are not frequent. *Poston v. Fox*, 577 F. Supp. 915, 920 (D.N.J. 1984) (identifying one instance of a partner's arranging a hotel room for his expert as *de minimis*). Here, DLS billed 59 times[13] for reviewing the docket, a frequency the Court concludes compels this reduction.

---

[13] This represents: (1) two time entries on July 11, 2019 (ECF No. 65-2 Ex. 4 at 45–60); (2) eight time entries on August 12, 2019 (*id.* Ex. 5 at 61–70); (3) ten time entries on September 17, 2019 (*id.* Ex. 6 at 71–82); (4) sixteen time entries on October 19, 2019 (*id.* Ex. 7 at 84–96); (5) eight time entries on November 18, 2019 (*id.* Ex. 8 at 98–105); (6) two time entries on December 11, 2019 (*id.* Ex. 9 at 107–11); (7) four time entries on January 13, 2020 (*id.* Ex. 10 at 112–17); (8) five time entries on February 20, 2020 (*id.* Ex. 11 at 118–23); and (9) four time entries on March 11, 2020 (*id.* Ex. 12 at 125–29).

### c.    News/Media-Related Activities Are Not Compensable

Defendants consider reviewing news articles and contacting media as non-compensable activities. (ECF No. 66 at 21.) AFP argues media awareness was both useful and necessary to advance the litigation. (ECF No. 68 at 19.) AFP claims the Court noted how media reports informed the dispute in its Opinion issuing the preliminary injunction. (*Id*. at 18.) The Court disagrees.

"[T]he proper forum for litigation is the courtroom, not the media." *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995). "Generally, press communications are not compensable" activities in awarding attorney's fees. *Guarnieri v. Borough*, 2008 U.S. Dist. LEXIS 80447, at *10–11 (M.D. Pa. Oct. 9, 2008) (citing *Heavens v. Golfview Estates, Inc.*, Nos. 96 C 1294, 96 C 1318, 1997 U.S. Dist. LEXIS 4007, 1997 WL 156486 (N.D. Ill. Mar. 31, 1997)); *Stair v. Lehigh Valley Carpenters Local Union No. 600*, No. 91-1507, 1994 U.S. Dist. LEXIS 5895, at *6 (E.D. Pa. May 5, 1994) (citations omitted) ("[T]ime spent with the media is not compensable as it is not ordinarily necessary to prosecute the case."). "Plaintiffs may not recover fees for an attorney's time spent on media and press coverage unless they can show that it contributed, directly or substantially, to the attainment of Plaintiffs' litigation goals." *Souryavong v. Lackawanna Cnty.*, 159 F. Supp. 3d 514, 537 (M.D. Pa. 2016) (deducting the hours billed to review of article on the case from the plaintiffs' requested attorney's fees award). Here, it was not the media coverage that propelled the Court to enter a preliminary injunction and a permanent injunction in favor of AFP. After all, "[i]t is this Court that decides this case, not the community." *Id.* Even if certain news articles that AFP's counsel reviewed may have described the political background underlying the current dispute around the legislation of S150 (ECF No. 39 at 23 n.21), the Court need not inquire into these political dynamics to make a legal decision.

Among AFP's counsel, DLS billed 2.7 hours[14] for reviewing news reports and preparing press statements; DG billed 17.6 hours[15] and RP7 billed 3.5 hours[16] for reviewing, gathering, synthesizing and alerting other team members to news reports; JMH billed 1.1 hours[17] for reviewing news articles.[18] These hours are not compensable and will be removed.

### d.      Preparations for Discovery and Appeals Are Compensable

Defendants argue AFP's counsel should not bill for preparing for discovery and appeals, because these procedures never occurred and are similar to unsuccessful claims, which generally are not compensable. (ECF No. 66 at 23.) AFP counters the time spent preparing for discovery and appeals is compensable, because it was a necessary part of this litigation and constitutes only a *de minimus* portion of the total billed hours. (ECF No. 68 at 16, 19.) The Court agrees.

Whether a plaintiff can bill for a particular type of work depends on how the work relates to the final relief obtained. The hours spent on an unsuccessful claim that is "distinct in all respects"

---

[14] This represents: (1) 0.4 hours billed on April 12, 2019 (ECF No. 65-2 Ex. 1 at 21–28); (2) 0.2 hours billed on May 13, 2019 (*id.* Ex. 2 at 29–36); (3) 0.6 hours billed on July 11, 2019 (*id.* Ex. 4 at 45–60); (4) 0.2 hours billed on September 17, 2019 (*id.* Ex. 6 at 71–82); (5) 1 hour billed on October 19, 2019 (*id.* Ex. 7 at 84–96); (6) 0.2 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); and (7) 0.1 hours billed on January 13, 2020 (*id.* Ex. 10 at 112–17).

[15] This represents: (1) 0.2 hours billed on May 13, 2019 (*id.* Ex. 2 at 29-36); (2) 1.6 hours billed on July 11, 2019 (*id.* Ex. 4 at 45–60); (3) 0.3 hours billed on August 12, 2019 (*id.* Ex. 5 at 61–70); (4) 2.8 hours billed on September 17, 2019 (*id.* Ex. 6 at 71–82); (5) 2.9 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96); (6) 6.5 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); (7) 0.8 hours billed on December 11, 2019 (*id.* Ex. 9 at 107–11); (8) 0.9 hours billed on January 13, 2020 (*id.* Ex. 10 at 112–17); (9) 0.5 hours billed on February 20, 2020 (*id.* Ex. 11 at 118–23); and (10) 1.1 hours billed on March 11, 2020 (*id.* Ex. 12 at 125–29).

[16] This represents 3.5 hours billed on July 11, 2019. (*Id.* Ex. 4 at 45–60.)

[17] This represents: (1) 0.2 hours billed on August 12, 2019 (*id.* Ex. 5 at 61–70); and (2) 0.9 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105).

[18] If a billing entry describes more than two types of work and contains news/press-related activities, 0.2 hours is attributed to each description of reviewing docket.

from the successful claims should be excluded in considering the amount of a reasonable attorney's fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). "[B]ased on different facts and legal theories," such an unrelated and unsuccessful claim "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" and should be treated as if it "had been raised in separate lawsuits." *Id.* at 434–35 (citations omitted). Similarly, the time spent on a motion or appeal which neither relates to nor has facilitated achieving the final relief is not compensable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1186 (3d Cir. 1990) (citing *Clark v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir. 1986)) (refusing to award attorney's fees for "the time expended on the motions [that] was unrelated to the relief ultimately obtained," and confirming the "hours spent on the appeal of a claim which was not pursued where 'nothing associated with the appeal contributed to any favorable result achieved by the litigation'" are not compensable). In contrast, "an attorney's time is compensable even for work done on non-fee-shifting claims if those claims are based on a common body of facts or law supporting claims under a fee-shifting statute." *Stockman v. Glob. Credit & Collection Corp.*, No. 14 C 6862, 2015 U.S. Dist. LEXIS 111113, at *15 (N.D. Ill. Aug. 21, 2015) (citing *Hensley*, 461 U.S. at 434–35).

Here, Defendants filed an answer (ECF No. 48) on January 3, 2020, about three months after the Court granted the preliminary injunction (ECF No. 40.) on October 2, 2019. This suggests Defendants' intent to proceed further with the case after the issuance of the preliminary injunction. The permanent injunction was not entered until March 2020 with the parties' agreement. (ECF No. 59.) As a result, it was rational for AFP to prepare in the intervening six months (between the issuances of the preliminary injunction and the preliminary injunction) for the prospect of discovery, a trial, or an appeal. In other words, as AFP undertook these preparations, they were reasonably related to the final relief, which might come only after discovery, a trial, or an appeal.

14

Even assuming the permanent injunction as the final relief, the preparatory work for discovery and appeals is based on the same facts and legal theories underlying the permanent injunction, and is therefore related to the final relief. Moreover, the preparatory work likely contributed to the parties' agreement for the permanent injunction. Accordingly, AFP's preparations for discovery and appeals are related to the final relief and are compensable.

### e.    The Work Related to Intervenors Is Not Compensable

Defendants claim AFP's counsel should not bill for addressing a Motion to Intervene filed by two New Jersey legislators (State Senate President Sweeney and Assembly Speaker Coughlin), because a defendant should not "be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who are found not to be liable." (ECF No. 66 at 23 (citing *Rode*, 892 F.2d at 1185).) Defendants maintain AFP has not shown the work on intervenors' case is fairly devoted to the prosecution of the claims against Defendants. (*Id.* at 24.) AFP argues the time spent on the intervention motion was part and parcel of this litigation, and constitutes only a minimal portion of the total hours billed. (ECF No. 68 at 16.) The Court disagrees.

A plaintiff is "not entitled to attorney fees from defendants for fees accrued in opposing the intervention" in which the defendant did not participate, because the plaintiff "did not 'prevail' vis-à-vis" the defendant who is neutral on the intervention. *Jefferson v. City of Camden*, No. 01-4218 (RBK), 2006 U.S. Dist. LEXIS 46654, at *40 (D.N.J. June 30, 2006) (citing *Reeves v. Harrell*, 791 F.2d 1481, 1483 (11th Cir. 1986)). Here, AFP does not allege in any way how Defendants participated in the intervention proceedings. Therefore, AFP is not entitled to recover attorney's fees for work related to the intervenors. DLS billed 10.5 hours[19] for work related to the

---

[19] This represents: (1) 0.5 hours billed on July 11, 2019 (ECF No. 65-2 Ex. 4 at 45–60); (2) 7.5 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); (3) 0.7 hours billed on January 13, 2020 (*id.* Ex. 10 at 112–17); (4) 1.4 hours billed on February 20, 2020 (*id.* Ex. 11 at 118–23); and (5) 0.4 hours billed on March 11, 2020 (*id.* Ex. 12 at 125–29).

intervenors, DG billed 0.4 hours[20] and JMH 21.2 hours.[21] These hours are not compensable and will be deducted.

### 2. Certain Hours Billed by Quinn Emanuel Are Excessive and Inflated

Defendants claim AFP's counsel billed an excessive number of hours for each major task of this litigation, totaling 1,873 hours. (ECF No. 66 at 26.) AFP counters the time spent on this litigation was reasonable and justified, because the issues were complex, novel, and high stakes. (ECF No. 68 at 14.) AFP claims Defendants played a role in driving up costs of this litigation. (*Id.* at 16.) The Court finds AFP's counsel overbilled some of the hours.

### a. The Issues Presented Here Are Not Complex or Novel

AFP states the issues presented here are novel in the State of New Jersey: S150 goes so far as to restrict issue advocacy, a breath unseen before in election regulations that are historically limited to electioneering communications. (ECF No. 65-1 at 32.) The Court disagrees.

In determining an attorney's fees award, "the complexity and novelty of the issues presented" may be "reflected in the number of billable hours recorded by counsel." *Burney v. Housing Authority of County of Beaver*, 735 F.2d 113, 116 (3d Cir. 1984) (citing *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). Here, AFP's argument on novelty has two flaws. First, in determining whether the issues in a lawsuit are novel, a district court may consider "similar cases pending in this and other Districts." *Conklin v. Pressler & Pressler LLP*, No. 10-3566, 2012 U.S. Dist. LEXIS 21609, at *16 (D.N.J. Feb. 21, 2012). Therefore, that the issues here are novel in New Jersey does not necessarily prove their novelty. Second, the alleged unprecedented breath of S150 does not

---

[20] This represents: (1) 0.2 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); and (2) 0.2 hours billed on January 13, 2020, 2019 (*id.* Ex. 10 at 112–17).

[21] This represents: (1) 20.8 hours billed on November 18, 2019 (*id.* Ex. 8 at 98–105); and (2) 0.4 hours billed on March 11, 2020 (*id.* Ex. 12 at 125–29).

necessarily present novel legal questions before the Court. The constitutionality of S150 turned on the scope of two key terms—"influencing or attempting to influence" and "providing political information"—in S150's definition of "independent expenditure committees." (ECF No. 39 at 25.) In resolving this issue, the Court considered several previous New Jersey cases striking down similar statutory provisions (*id.* at 9), used established tools of statutory construction to clarify the scope of the two key terms (*id.* at 24, 30), and relied on a standard set by the Supreme Court to analyze how the two key terms affected S150's constitutionality (*id.* at 32 (citing *Buckley v. Valeo*, 424 U.S. 1, 93 (1976)) (applying the "exacting scrutiny" standard to determine whether S150's compelled identification of contributors infringes the contributors' First Amendment rights).) In granting the preliminary injunction, the Court had the benefit of *Reilly* factors. (*Id.* at 21 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).) Therefore, the Court did not encounter any major novel issue or question here.

AFP alleges the complexities of this case involve both procedural and substantive components. On the procedural side, AFP had to track and engage political actors, including the Governor; deal with interventions by State legislators; prepare a fact-intensive showing of irreparable harm; monitor and analyze supposed "fix it" legislation; prepare for discovery and possible live testimony; and coordinate strategy with actual and potential co-challengers. As to the substantive legal issues, AFP had to ascertain the S150's import and constitutional dimensions; mount parallel facial and as-applied challenges; and respond to Defendants' proposed narrowing constructions. (ECF No. 65-1 at 32–34.) However, these activities and issues do not render the case particularly complex and cannot justify a significant increase of the hours reasonably expended.

Procedurally, though AFP had to deal with multiple parties and other stakeholders, these actors did not hold vastly different positions or interests. Instead, all they sought was either preserving or challenging S150. Also, AFP did not engage in any extensive and prolonged discovery, motion, trial or appeal practices, which may render a case complex. *See In re Pet Food Prods. Liab. Litig.*, No. 1850, 2008 U.S. Dist. LEXIS 94603, at *110–11 (D.N.J. Nov. 18, 2008), *vacated on other grounds*, 629 F.3d 333 (3d Cir. 2012) (ruling that "this case go[es] to trial rather than settle weighs in favor of" finding the case complex); *Material Techs. Inc. v. Carpenter Tech. Corp.*, No. 01-2965, 2004 U.S. Dist. LEXIS 28893, at *18 (D.N.J. Sept. 16, 2004) (finding "the obvious complexity of this particular discovery dispute, as evidenced by the voluminous motion practice and appeal"); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 154–55 (D.N.J. 2013) (finding the litigation complex as the plaintiffs' counsel "engaged in extensive discovery and motion practice, and the litigation of this matter has been a costly and lengthy process for all parties"); *Andujar v. Gen. Nutrition Corp.*, No. 14-7696, 2018 U.S. Dist. LEXIS 141244, at *9–10 (D.N.J. Aug. 20, 2018) ("Although plaintiff and defense counsel have likely litigated more complex cases, the case was not routine. Discovery was contentious and the Court had to address and resolve challenging discovery disputes. In addition, plaintiff successfully opposed defendant's motion for summary judgment and participated in a three-day trial."). Here, there was not a trial, and the Court entered a permanent injunction after the parties reached a settlement agreement. (ECF No. 59.) Though AFP engaged in considerable factual investigations regarding irreparable harm and a supposed "fix it" legislation, no discovery occurred. The only major litigation procedures AFP undertook included filing of the Complaint and the Motion for a Preliminary Injunction, filing a Reply to Defendants' Opposition, and attending a hearing on the Motion. (ECF No. 66 at 27.) All this took less than three months to complete. (*Id.*)

As for the substantive issues, this case does not present any major, novel legal questions. AFP admits it previously "retained Quinn Emanuel to litigate a similar First Amendment challenge to a regulation requiring donor disclosure to the Attorney General of California," and "the two partners who were primarily involved in this matter, Derek Shaffer and Keith Forst, also had lead roles in the California litigation." (ECF No. 65-5 at 3.) "In that case, Quinn Emanuel successfully obtained a preliminary injunction and a permanent injunction after a full trial on the merits." (*Id.* at 3–4 (citing *Americans for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049 (C.D. Cal. 2016), *rev'd and vacated sub nom. Americans for Prosperity Found. v. Becerra*, 903 F.3d 1000 (9th Cir. 2018)).) With a familiar and similar prior case for guidance, AFP "was not writing on a 'blank slate' when counsel filed suit," which speaks against finding a case complex to "support an extraordinary fee award." *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at \*80 (D.N.J. Aug. 9, 2012). Also, though AFP claims Defendants "proposed narrowing constructions required a dizzying cross-statutory analysis" (ECF No. 65-1 at 27 n.4), dealing with Defendants' proposal is not as complex as AFP claims to be. To rule on Defendants' proposed narrowing construction of "influencing or attempting to influence" in N.J. Stat. Ann. § 19:44A-3(t), the Court looked into only two other provisions, i.e., N.J. Stat. Ann. §§ 19:44A-3(u) & 19:44A-8, in the cross-statutory analysis. (ECF No. 39 at 26–27.) This was hardly "dizzying" for this Court to handle.

Therefore, the Court does not find this case complex procedurally or substantively.

**b.      The Hours Billed for Hearing Preparations Are Excessive**

Defendants complain AFP's counsel excessively billed 211.2 hours and sent at least four attorneys for the 2-hour hearing on the preliminary injunction motion. (ECF No. 66 at 27.) In particular, AFP's counsel billed 28.4 hours for the day of the hearing, and spent much of the time

preparing for the hearing on creating PowerPoint presentations that Defendants argue were superfluous. (*Id.* at 27–28.) Defendants further contend certain individual attorneys at Quinn Emanuel billed staggering numbers of hours worked in a single day. (*Id.* at 28.) The Court agrees.

"Time entries related to . . . preparation for hearings and trial warrant close inspection as courts that have examined claimed hours for reasonableness have compared the time spent preparing for the trial to the duration of the trial." *Deptford Twp. Sch. Dist. v. H.B.*, No. 01-784, 2006 U.S. Dist. LEXIS 92456, at *22 (D.N.J. Dec. 21, 2006), *rev'd on other grounds*, 279 F. App'x 122 (3d Cir. 2008) (citing *Apple Corps. v. International Collectors Soc'y*, 25 F. Supp. 2d 480, 491 (D.N.J. 1998)). "[I]t is excessive for a senior partner to spend almost three times as long to prepare for a hearing as to attend it." *Apple Corps.*, 25 F. Supp. 2d at 491. If only "limited relief" is obtained, it may be excessive for "an experienced attorney" to have its "ratio of time spent in preparation to time spent attending a hearing" to reach 2:1. *Deptford Twp.*, 2006 U.S. Dist. LEXIS 92456, at *21–23.

Here, AFP's counsel billed roughly 203.2 hours (as shown in the chart below) on preparation for the hearing, compared with only 8 hours billed by four attorneys for actually attending the hearing. Even assuming AFP obtained a complete relief, the Court finds the time spent on hearing preparation to be unreasonably long. In particular, DLS, who AFP claims to have specialized expertise tailor-made for this litigation (ECF No. 65-1 at 27), billed 27.6 hours[22] on preparing for the hearing. This alone is more than three times the total amount of time AFP's counsel billed for attending the hearing, i.e., 8 hours. Accordingly, the Court reduces the amount of time AFP's counsel may bill for hearing preparation to 22 hours, to be applied with the

---

[22] This represents: (1) 1.2 hours billed on August 12, 2019 (ECF No. 65-2 Ex. 5 at 61–70); (2) 0.5 hours billed on September 17, 2019 (*id.* Ex. 6 at 71–82); and (3) 25.9 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96).

reasonable hourly rate of a senior partner. Because only two senior Quinn Emanuel partners, i.e., DLS and Keith H. Forst ("KHF"), both prepared for and attended the hearing, the 22 hours will be attributed to and equally allocated between the two partners. The hours billed by their colleagues on preparing for the hearing will not be counted. Therefore, the Court will remove the following number of billed hours as unreasonably expended for preparing for the hearing:

| Counsel[23] | Claimed hours | Lodestar hours | Hours removed |
|---|---|---|---|
| DLS | 27.6 | 11.0 | 16.6 |
| KHF | 18.6[24] | 11.0 | 7.6 |
| JMH | 119.0[25] | 0.0 | 119.0 |
| SCC | 20.0[26] | 0.0 | 20.0 |
| JA4 | 1.5[27] | 0.0 | 1.5 |
| DG | 13.9[28] | 0.0 | 13.9 |
| DS4 | 2.6[29] | 0.0 | 2.6 |
| Total | 203.2 | 22.0 | 181.2 |

Indeed, in determining the reasonableness of the time billed for hearing preparation, the duration of the actual hearing "is but one factor to be considered." *N.J. Primary Care Ass'n v. State Dep't of Human Servs.*, No. 12-413, 2013 U.S. Dist. LEXIS 91098, at *26 (D.N.J. June 28, 2013) (finding 21 hours of preparation for a one-hour preliminary injunction hearing not

---

[23] Name abbreviations: Sara C. Clark ("SCC"); Jordan Ascher (JA4); Dave Scholz (DS4).

[24] This represents: (1) 1.5 hours billed on August 12, 2019 (ECF No. 65-2 Ex. 5 at 61–70); and (2) 17.1 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96).

[25] This represents: (1) 0.5 hours billed on September 17, 2019 (*id.* Ex. 6 at 71–82); and (2) 118.5 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96).

[26] This represents 20 hours billed on October 19, 2019. (*Id.* Ex. 7 at 84–96.)

[27] This represents 1.5 hours billed on July 11, 2019. (*Id.* Ex. 4 at 45–60.)

[28] This represents 1.8 hours billed on August 12, 2019 (*id.* Ex. 5 at 61–70); and (2) 12.1 hours billed on October 19, 2019 (*id.* Ex. 7 at 84–96).

[29] This represents 2.6 hours billed on October 19, 2019. (*Id.* Ex. 7 at 84–96.)

unreasonable). A court may also consider a party's need to cope with the uncertainty in the court's scheduling and concerns regarding the relevant proceeding. *Id.* ("The Court notes that hearings of this nature can last several hours. Indeed, Plaintiff's counsel was instructed to return on another date and resume the hearing. Moreover, the Court appreciates that counsel cannot always anticipate the Court's concerns and, as such, needs to be thoroughly prepared and well versed on all relevant issues of fact and law. Therefore, the Court shall not reduce these hours."). Here, the Court does not discern, and AFP does not provide, any compelling and specific reason justifying its billing of over 200 hours on preparing for the hearing. Also, that issues presented here are not novel or complex speaks against allowing more billable hours.

Whether AFP's counsel sent more attorneys than necessary for the hearing does not change the Court's analysis. "Excluded from the lodestar calculation are hours not reasonably expended, such as hours attributable to over-staffing." *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 219 (D.N.J. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). However, "there may have been more attorneys and legal staff working on this case than necessary, but it will not, without more, arbitrarily exclude hours from the lodestar calculation simply because they seem excessive." *Cassagne v. Law Offices of Weltman, Weinberg & Reis Co., LPA*, No. 11-2791, 2011 U.S. Dist. LEXIS 135207, at *25 (D.N.J. Nov. 23, 2011) (citations omitted). Defendants stress AFP's counsel sent to the hearing four attorneys who together billed 28.4 hours on that day, but do not explain why sending four attorneys was excessive and unnecessary. (ECF No. 66 at 27.) Also, the Court has already significantly reduced the billable hours on preparing for the hearing, and declines to make more reductions because of AFP's counsel's alleged over-staffing for the hearing.

Similarly, Defendants' allegation that certain individual attorneys at Quinn Emanuel billed an extraordinarily high number of hours on a single day, without more, does not warrant a reduction of reasonably expended hours. Defendants did not adequately explain why a particular attorney could not have reasonably billed more than 10 hours on a single day, which could be necessitated by the tasks imposed on that attorney.

Defendants' contention that AFP's counsel billed too much time for creating PowerPoint presentations for the hearing also does not change the Court's analysis. The Court already has reduced considerably the amount of time that can be reasonably billed for the hearing preparation.

Based on the above analysis, the Court will remove the following billed hours as unreasonably expended:

| Task→<br>Counsel | Lobby | Routine activities | News/media | Intervention | Hearing preparation | Total |
|---|---|---|---|---|---|---|
| DLS | 32.5 | 4.1 | 2.7 | 10.5 | 16.6 | 66.4 |
| KHF | | | | | 7.6 | 7.6 |
| JMH | 95.6 | | 1.1 | 21.2 | 119.0 | 236.9 |
| SCC | | | | | 20.0 | 20.0 |
| JA4 | | | | | 1.5 | 1.5 |
| DG | 0.5 | | 17.6 | 0.4 | 13.9 | 32.4 |
| DS4 | | | | | 2.6 | 2.6 |
| RP7 | 14.3 | | 3.5 | | | 17.8 |
| PH2 | 53.9 | | | | | 53.9 |
| WAB | 3.2 | | | | | 3.2 |

As a result, the Court finds the total number of reasonably expended hours for each attorney to be as follows:

| Counsel[30] | Claimed hours[31] | Hours removed | Lodestar hours |
|---|---|---|---|

---

[30] Name abbreviations: Whitney Mulhauser ("WM2"); Jonathan G. Cooper ("JGC"); Gabby Trevino ("GT"); Joe Liao ("JL9").

[31] ECF No. 66 at 17.

| DLS | 235.7 | 66.4 | 169.3 |
| KHF | 127.5 | 7.6 | 119.9 |
| JMH | 729.0 | 236.9 | 492.1 |
| SCC | 50.3 | 20.0 | 30.3 |
| JA4 | 81.4 | 1.5 | 79.9 |
| DG | 109.9 | 32.4 | 77.5 |
| DS4 | 2.6 | 2.6 | 0.0 |
| RP7 | 28.0 | 17.8 | 10.2 |
| PH2 | 440.4 | 53.9 | 386.5 |
| WM2 | 48.7 | | 48.7 |
| JGC | 9.9 | | 9.9 |
| WAB | 7.7 | 3.2 | 4.5 |
| GT | 1.3 | | 1.3 |
| JL9 | 0.6 | | 0.6 |
| Total | 1873.0 | 442.3 | 1430.7 |

### B.      Analysis of the Reasonable Hourly Rate

"[A] reasonable hourly rate should be determined by examination of the prevailing market rates in the relevant community at the time of the fee petition, not the time the legal services were performed." *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (citations omitted). A court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Here, Quinn Emanuel applied a 10% discount to AFP's bills and correspondingly reduced the effective hourly rates sought (ECF No. 65-1 at 24 n.3), which are as follows:

| Counsel | Title | Hourly rate billed | Hourly rate sought |
|---------|-------|--------------------|--------------------|
| WAB | Partner | $1550[32] | $1395 |

---

[32] ECF No. 65-2 Ex. 2 at 35, Ex. 3 at 42, Ex. 6 at 80.

| DLS | Partner | $1,150,[33] $1,200[34] | $1,035, $1080 |
| KHF | Partner | $975[35] | $877.5 |
| JGC | Partner | $940[36] | $846 |
| JMH | Associate | $875, [37] $885, [38] $995[39] | $787.5, $796.5, $895.5 |
| SCC | Associate | $695,[40] $770[41] | $625.5, $693 |
| WM2 | Associate | $695[42] | $625.5 |
| PH2 | Associate | $655[43] | $589.5 |
| RP7 | Law Clerk | $390[44] | $351 |

---

[33] *Id.* Ex. 1 at 27, Ex. 2 at 35, Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80, Ex. 7 at 94, Ex. 8 at 103, Ex. 9 at 109, Ex. 10 at 116.

[34] *Id.* Ex. 11 at 121, Ex. 12 at 128.

[35] *Id.* Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80, Ex. 7 at 94, Ex. 8 at 103.

[36] *Id.* Ex. 1 at 27, Ex. 4 at 58, Ex. 7 at 94.

[37] *Id.* Ex. 1 at 27, Ex. 2 at 35, Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80.

[38] *Id.* Ex. 7 at 94, Ex. 8 at 103, Ex. 9 at 109, Ex. 10 at 116.

[39] *Id.* Ex. 11 at 121, Ex. 12 at 128.

[40] *Id.* Ex. 6 at 80.

[41] *Id.* Ex. 7 at 94, Ex. 10 at 116.

[42] *Id.* Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80.

[43] *Id.* Ex. 1 at 27, Ex. 2 at 35, Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80.

[44] *Id.* Ex. 3 at 42, Ex. 4 at 58.

| JA4 | Law Clerk | $390[45] | $351 |
|---|---|---|---|
| DG | Paralegal | $330,[46] $355[47] | $297, $319.5 |
| GT | Paralegal | $330[48] | $297 |
| DS4 | Graphics Coordinator | $300[49] | $270 |
| JL9 | Litigation Support | $175[50] | $157.5 |

### 1.    Relevant Legal Community Is In Trenton Vicinage

AFP claims the constitutional questions here warranted retaining out-of-forum counsel, thereby justifying an award at out-of-forum rates under the "special expertise" exception. (ECF No. 65-1 at 37.) Defendants counter AFP's decision to retain a Washington, D.C. firm was unwarranted, since the two prominent New Jersey firms that litigated together with Quinn Emanuel have the needed expertise to handle this case. (ECF No. 66 at 38.) The Court agrees.

"[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). This is known as the "forum rate" rule. *Id.* However, an exception to the rule exists. "[I]f a prevailing party can show that it required the particular expertise of counsel from another vicinage, or that local counsel

---

[45] *Id.* Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68.

[46] *Id.* Ex. 1 at 27, Ex. 2 at 35, Ex. 3 at 42, Ex. 4 at 58, Ex. 5 at 68, Ex. 6 at 80, Ex. 7 at 94, Ex. 8 at 103, Ex. 9 at 109, Ex. 10 at 116.

[47] *Id.* Ex. 11 at 121, Ex. 12 at 128.

[48] *Id.* Ex. 6 at 80.

[49] *Id.* Ex. 7 at 94.

[50] *Id.* Ex. 4 at 58.

were unwilling to take on the litigation, then it will be entitled to compensation based on prevailing rates in the community in which its attorneys practice." *Id.* at 699. To prove the special expertise of an out-of-forum counsel is required, the prevailing party needs "sufficient evidence" to show it (1) "searched for firms in [the forum] with the ability to handle this case," and (2) "was unable to find attorneys with [an out-of-forum counsel's] extensive experience with [similar] cases." *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, No. 02-4549, 2006 U.S. Dist. LEXIS 62966, at *81 (D.N.J. Sept. 5, 2006).

Here, AFP presents no positive evidence that it actually searched for New Jersey law firms and could not find one with the required special expertise. APF only claims, apart from Quinn Emanuel, it was "aware of no other firm—in New Jersey or otherwise—offering this level of experience with AFP's issues and executive team." (ECF No. 65-5 at 4.) On the contrary, AFP admits the local counsel it retained has "substantially contributed their advice and expertise in this case," and has "significant experience handling constitutional challenges in highly public—and political—settings in New Jersey." (ECF No. 65-1 at 39.) As a result, the Court determines the "forum rate" rule applies. The forum here is the United States District Court for the District of New Jersey—Trenton Vicinage. Therefore, in determining a reasonably hourly rate, the Court looks to the market rate prevailing in Trenton Vicinage charged for similar services by lawyers of reasonably comparable skill, experience, and reputation.

### 2.    AFP Fails to Carry Its Burden of Proving A Reasonable Market Rate

The fee applicant carries "the initial burden of 'producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case.'" *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (citing *Lanni v. N.J.*, 259 F.3d 146, 149 (3d Cir. 2001)). "This

burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998) (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996)). "Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (citations omitted). If "the only evidence submitted regarding the prevailing rate in the local legal community was the self-serving declaration from [the plaintiff's] lead counsel," then the plaintiff fails to establish its "prima facie case" for "the prevailing rate in the relevant community." *Plan Adm'r v. Kienast*, No. 2:06-cv-1529, 2008 U.S. Dist. LEXIS 37236, at *14–15 (W.D. Pa. May 2, 2008). "If the plaintiff fails to sustain his or her burden with respect to a reasonable market rate, the district court 'must use its discretion to determine the market rate.'" *Roccisano v. Twp. of Franklin*, No. 11-6558, 2015 U.S. Dist. LEXIS 75622, at *11 (D.N.J. June 11, 2015) (citing *L.J.*, 373 F. App'x at 297). Here, AFP fails to establish its *prima facie* case for the reasonable market rate.

First, AFP does not provide any declaration or affidavit from an attorney unaffiliated with its legal counsel on the in-forum prevailing rate. Instead, two attorneys from AFP's local counsel, Kevin H. Marino and Christopher S. Porrino, declared Quinn Emanuel's hourly rates are consistent with the prevailing market rates for attorneys of similar skill, expertise, and reputation in the relevant community. (ECF No. 65-1 at 40.) These declarations may be viewed as self-serving. "To the extent the affidavit leaves any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees." *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 695 (D.N.J. 2002). "This is because the party seeking to recover attorney's

28

fees bears the burden of establishing its right to them." *Id.* (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

Second, the survey evidence presented by AFP also is insufficient to meet its *prima facie* burden. AFP provides a recent National Law Journal survey of billing rates across the nation, alleging Quinn Emanuel's hourly rates fall squarely within the range of hourly rates at large law firms in the Philadelphia-New Jersey-New York City corridor. (ECF No. 65-1 at 41.) Among the survey figures, AFP points to the billing rates of several law firms in Hackensack, Philadelphia and New York City, with which Quinn Emanuel's hourly rates are commensurate. (*Id.*) But these law firms are not based in the Trenton Vicinage. Though Hackensack is in New Jersey, it is in the northern part of the state, where, as explained in Part III.B.3, *infra*, the prevailing rate is higher than that in southern New Jersey. It is therefore doubtful whether the prevailing rate in Hackensack may properly reflect that in Trenton Vicinage, which is in central New Jersey. Such a doubt shall be resolved against the award of attorney's fees.

Third, AFP cites a number of prior cases where courts found Quinn Emanuel's requested rates reasonable. (*Id.* at 42.) But these cases do not change the conclusion. First, "[c]ourts should look to awards previously granted in the same area to determine the reasonableness of the requested fee." *Levyash v. Colvin*, No. 3:16-cv-2189, 2020 U.S. Dist. LEXIS 98686, at *11 (D.N.J. June 4, 2020) (citations omitted); *see also Gonzalez v. Astrue*, 564 F. Supp. 2d 317, 320 (D.N.J. 2008) ("The reasonableness of Plaintiff's request is supported by similar Social Security Administration ('SSA') cases in which courts have found the requested attorney hours to be reasonable and awarded appropriate fees."). Here, none of the New Jersey cases cited by AFP (ECF No. 65-1 at 42 n.6) is in the area of civil rights. *See NXIVM Corp. v. Sutton*, *NXIVM*, No. 06-1051, 2019 WL 4010859, at *1 (D.N.J. Aug. 26, 2019) (involving a commercial contract

dispute); *In re Schering-Plough Corp.*, Nos. 08–397 & 08–2177, 2013 WL 12174570, at *2, 28 (D.N.J. Aug. 28, 2013) (involving two securities class-action lawsuits where a full-blown lodestar inquiry was absent, because the percentage-of-recovery approach was used to assess the attorney's fees award); *Donovan v. Dragados, S.A.*, No. 09-409, 2014 WL 12769388, at *13 (D.N.J. May 6, 2014) (involving a bankruptcy case filed in a Bankruptcy Court, which is not required to follow the same procedures in fee applications as in the District Courts). Therefore, these cases provide little guidance for the reasonable rate determination. Second, the out-of-district cases cited by AFP (ECF No. 65-1 at 42 n.7) are irrelevant, because they neither bind this Court nor assessed the prevailing rate in the Trenton Vicinage.

Accordingly, AFP fails to carry its *prima facie* burden with respect to the reasonable hourly rate. As a result, the Court will use its discretion to determine the rate.

### 3.    The Fee Schedule in the Community Legal Services of Philadelphia Provides the Standard

Defendants propose the fee schedule in the Community Legal Services ("CLS") of Philadelphia has articulated reasonable hourly rates, which have been used in litigations in the District of New Jersey for evaluating fee disputes. (ECF No. 66 at 35–36.) Defendants alternatively contend, in the event the Court finds no competent local counsel was willing or able to handle the case, the Court should use the Laffey Matrix, which provides the billing rates for attorneys in the Washington D.C. market with various degrees of experience. (*Id.* at 39.) AFP opposes the use of either the CLS fee schedule or the Laffey Matrix, stating neither indicates the rates in New Jersey. (ECF No. 68 at 12.)

The Court will not consider the Laffey Matrix here. "[T]he Third Circuit has expressly cautioned against relying on the Laffey Matrix." *N.J. Primary Care Ass'n v. State Dep't of Human Servs.*, No. 12-413, 2013 U.S. Dist. LEXIS 91098, at *19 (D.N.J. June 28, 2013) (citing *Interfaith*

*Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 n.14 (3d Cir. 2005)). "Moreover, the courts in this District have consistently dispelled the relevance of the Laffey Matrix," which "is not relevant outside of the Washington D.C. area." *Freid v. Nat'l Action Fin. Servs.*, No. 10-2870, 2011 U.S. Dist. LEXIS 149668, at *21–22 (D.N.J. Dec. 29, 2011) (citations omitted).

Instead, the Court adopts the CLS fee schedule, but with an upward adjustment. "[T]he Third Circuit has endorsed use of the schedule to determine fees for the Philadelphia market, and courts in this District have also done the same for South Jersey." *Raab v. City of Ocean City*, No. 11-6818, 2017 U.S. Dist. LEXIS 99034, at *9–10 (D.N.J. June 26, 2017) (citations omitted); *see also Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 555–56 (D. Del. 2019) (citations omitted) (adopting the CLS fee schedule for calculating the attorney's fees for a case "litigated in Delaware," based on "the Court's perception of a regional market for legal services, encompassing Philadelphia, southern New Jersey, and Delaware"); *Warner v. Twp. of South Harrison*, No. 09-6095, 2013 U.S. Dist. LEXIS 90411, at *27–28 (D.N.J. June 27, 2013)) (adopting the CLS fee structure in determining the reasonable rate for a case litigated in southern New Jersey).

However, the hourly rate in southern New Jersey has been found lower than that in northern New Jersey. *Connor v. Sedgwick Claims Management Services, Inc.*, No. 09-cv-1140, 2012 WL 608483, at *4 (D.N.J. Feb. 23, 2012) (finding the prevailing hourly rate in southern New Jersey to be $250, after the plaintiff requested an hourly rate of $375 based on an affidavit and a prior case referring to the hourly rates in New York or northern New Jersey). Here, the forum is the Trenton Vicinage located in central New Jersey. The Court assumes the hourly rate in central New Jersey is in between the rates in northern and southern New Jersey. Therefore, the Court will apply an upward adjustment of $50 an hour to the high end of the hourly rate allowed in the CLS fee schedule, shown as follows:

| Experience level | Counsel | CLS rate[51] | High end of CLS rate | Lodestar rate |
|---|---|---|---|---|
| Attorneys post-law school experience under 2 years | | $200-220 | $220 | $270 |
| Attorneys 2-5 years' experience | PH2, WM2, SCC | $230-275 | $275 | $325 |
| Attorneys 6-10 years' experience | JGC, JMH | $280-360 | $360 | $410 |
| Attorneys 11-15 years' experience | KHF | $375-450 | $450 | $500 |
| Attorneys 16-20 years' experience | DLS | $475-530 | $530 | $580 |
| Attorneys 21-25 years' experience | WAB | $550-640 | $640 | $690 |
| Attorneys more than 25 years' experience | | $650-700 | $700 | $750 |
| Law Students | JA4, RP7 | $110-160 | $160 | $210 |
| Paralegal I and II | DG, DS4, GT, JL9 | $160-200 | $200 | $250 |
| Senior and Supervisory Paralegal | | $205-230 | $230 | $280 |

## C.  The Determination of Quinn Emanuel's Expenses

The Court is unable to calculate with accuracy the expenses charged by Quinn Emanuel for its compensable activities, because nothing in the record indicates the particular activity for which a certain amount of expenses was generated. However, the Court is able to make an estimate here with the following steps. First, sum up all the expenses recorded in Quinn Emanuel's invoice (ECF No. 65-2), which makes the net total expenses. Second, deduct the expenses for "Professional services—Other," representing the amounts invoiced by Marino Tortorella (*id.* at 8), from the net total expenses, which makes the total expenses for Quinn Emanuel's activities ("deducted total expenses"). Third, under the assumption that expenses were generated in perfect

---

[51]  Community Legal Services, *Attorney Fees*, CLSPHILA.ORG, https://clsphila.org/about-community-legal-services/attorney-fees/ (July 1, 2018).

proportion to billed hours, the expenses generated for Quinn Emanuel's compensable activities ("compensable total expenses") should be: the deducted total expenses timed by the number of hours billed for compensable activities, and divided by the number of total billed hours.

The calculations for the first and the second steps are summarized as follows:

| Billing date | Net expenses | "Professional services—Other" expenses | Deducted expenses |
|---|---|---|---|
| April 12, 2019 | $87.84 (ECF No. 65-2 Ex. 1 at 27) | | $87.84 |
| May 13, 2019 | $471.40 (*id.* Ex. 2 at 35) | | $471.40 |
| June 14, 2019 | $929.51 (*id.* Ex. 3 at 43) | | $929.51 |
| July 11, 2019 | $1,900.01 (*id.* Ex. 4 at 59) | | $1,900.01 |
| August 12, 2019 | $429.30 (*id.* Ex. 5 at 69) | | $429.30 |
| September 17, 2019 | $48,215.81 (*id.* Ex. 6 at 81) | $46,703.68 | $1512.13 |
| October 15, 2019 | $23,622.00 (*id.* Ex. 7 at 95) | $12,336.00 | $11286.00 |
| November 18, 2019 | $14,923.36 (*id.* Ex. 8 at 104) | $13,970.00 | $953.36 |
| December 11, 2019 | $7,973.10 (*id.* Ex. 9 at 110) | $7,196.71 | $776.39 |
| January 13, 2020 | $158.60 (*id.* Ex. 10 at 116) | $158.60 | $0 |
| February 20, 2020 | $4,232.13 (*id.* Ex. 11 at 112) | $4,232.13 | $0 |
| March 11, 2020 | $1,724.20 (*id.* Ex. 12 at 128) | $1,720.00 | $4.2 |
| Total | $104,667.26 | $86,317.12 | $18350.14 |

As indicated in Part A, *supra*, of the total 1873 hours AFP claims to reasonably expended, 1431.1 hours were billed for compensable activities. Applying the third step, the Court estimates the compensable total expenses to be: $18350.14*1431.1/1873 = $14,020.76.

### D.  The Determination of AFP's Local Counsel's Fees and Expenses

The total fees and expenses sought by AFP include $86,158.52 by Marino Tortorella (ECF No. 65-3 at 2) and $19,699.48 by Lowenstein Sandler (ECF No. 65-4 at 2). The Court approves awarding the above fees and expenses, which the parties do not dispute. Also, the fees and expenses for Marino Tortorella were incurred as an actual expense paid by Quinn Emanuel, which the Court assumes would not pay for legal services it did not consider as reasonable and necessary. (ECF No. 65-2 at 8.) Accordingly, the Court awards the following fees and expenses for AFP's local counsel: $86,158.52+$19,699.48 = $105,858.00.

### E.  Adjustment of Attorney's Fees and Expenses

AFP argues the Court has strong grounds to increase the fees to account for its maximal success, in light of AFP's complete victory for all issue-advocacy groups and vindicating important constitutional rights, which Defendants have acknowledged. (ECF No. 68 at 14.) The Court disagrees.

"After a district court determines the lodestar, its discretion comes into play and it can adjust the fee for a variety of reasons." *Public Interest Research Group of N.J. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). "The factors commonly considered" include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of alternative employment; (5) the customary fee for similar work; (6) the nature of the fee payment arrangement; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases.

*Id.* at 1185 n.8 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "A number of these factors, however, are subsumed in the lodestar calculation." *Id.* (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)). For example, "the complexity and novelty of the issues presented . . . will be reflected in the number of billable hours and would not warrant an upward adjustment when the fee is based on the number of billable hours times reasonable hourly rates." *Burney v. Housing Authority of County of Beaver*, 735 F.2d 113, 116 (3d Cir. 1984) (citing *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). "The burden of proving that such an adjustment is necessary . . . is on the fee applicant," who must provide "specific evidence" to justify the adjustment. *Blum*, 465 U.S. at 898–99. Here, AFP presents no such specific evidence. AFP only states conclusively its victory vindicates important constitutional rights for all issue-advocacy groups. But "the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." *Blum*, 465 U.S. at 900. Also, AFP has not shown its victory here is exceptional; one way to do this could be by comparing this case to other civil rights cases that also strike down a statute as unconstitutional.

Accordingly, the Court will not adjust the fees award.

### F. Final Calculations

Based on the above analysis, the Court has determined the appropriate hourly rate and the appropriate number of hours to be billed, and the lodestar for Quinn Emanuel shall be as follows:

| Counsel | Expended hours | Hourly rate | Lodestar |
| --- | --- | --- | --- |
| DLS | 169.3 | $580 | $98,194 |
| KHF | 119.9 | $500 | $59,950 |
| JMH | 492.1 | $410 | $201,761 |
| SCC | 30.3 | $325 | $9847.5 |
| JA4 | 79.9 | $210 | $16,779 |

| DG | 77.5 | $250 | $19,375 |
| DS4 | 0.0 | $250 | $0 |
| RP7 | 10.2 | $210 | $2142 |
| PH2 | 386.5 | $325 | $125,612.5 |
| WM2 | 48.7 | $325 | $15,827.5 |
| JGC | 9.9 | $410 | $4,059 |
| WAB | 4.5 | $690 | $3,105 |
| GT | 1.3 | $250 | $325 |
| JL9 | 0.6 | $250 | $150 |
| Total | 1430.7 | | $557127.5 |

Adding up (1) the above lodestar figure of Quinn Emanuel, (2) Quinn Emanuel's reasonable expenses calculated in Part. C, *supra*, and (3) the local counsel's fees and expenses calculated in Part. D, *supra*, the Court concludes APF is entitled to the following amount of attorney's fees and expenses: $557127.5 +$14,020.76+$105,858.00 = $677,006.26.

## IV.   CONCLUSION

For the reasons set forth above, AFP's Motion for Attorney's Fees is **GRANTED IN PART and DENIED IN PART**. An appropriate order will follow.


Date: March 26, 2021                    */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**